1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JANICE HENNESSEY,

                    Plaintiff,

       v.

RADIUS GLOBAL SOLUTIONS LLC et al.,

                  Defendant.

CASE NO. 3:24-cv-05654-DGE

ORDER ON MOTIONS TO
DISMISS (DKT. NOS. 18, 26)

## I     INTRODUCTION

This matter comes before the Court on two motions to dismiss, the first from Defendants Radius Global Solutions LLC ("RGS") and Michael Barrist (Dkt. No. 18), the second from Defendant Experian Information Solutions Inc. ("Experian") (Dkt. No. 26). Plaintiff responded to each motion (Dkt. Nos. 30, 34); Defendants replied (Dkt. Nos. 35, 38); and Plaintiff surreplied (Dkt. Nos. 37, 40). Upon thorough review of the briefing provided by the Parties, the Court DISMISSES Plaintiff's claims against Experian, RGS, and Barrist.

## II    BACKGROUND

On August 8, 2024, Plaintiff Janice Hennessy, proceeding *pro se*, filed a complaint against four defendants: Trans Union LLC ("Trans Union"), Experian, RGS, and the Chief Executive Officer of RGS, Michael Barrist.  (Dkt. No. 1.)  Plaintiff's First Amended Complaint alleges violations of the Washington Fair Credit Reporting Act ("WFCRA"), the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), the Washington Consumer Protection Act ("WCPA"), and the Gramm-Leach-Bliley Act ("GLBA").  (Dkt. No. 14 at 23–64.)  Plaintiff also brings several claims under Washington law, including identity theft, defamation, negligence, emotional distress, and invasion of privacy.  (*Id*. at 42–61.)  On September 16, 2024, RGS and Barrist moved to dismiss Plaintiff's First Amended Complaint for failure to state a claim.  (Dkt. No. 18.)  On October 3, 2024, Experian moved to dismiss Plaintiff's First Amended Complaint for failure to state a claim.  (Dkt. No. 26.)

### A.  Factual Background

The following facts are taken from Plaintiff's First Amended Complaint and must be accepted as true for the purposes of Defendants' motions to dismiss.[1]

Plaintiff alleges that in January of 2024, she reviewed her credit reports and "found unfamiliar entries"—specifically, a negative tradeline reported by RGS.  (Dkt. No. 14 at 5, 9.)  Plaintiff claims that "after examination of her TransUnion consumer credit reports," she learned that RGS "had pulled Plaintiff's TransUnion consumer credit report on February 13, 2021, September 25, 2021, and March 2, 2022, and placed inquiries on her consumer file, without her knowledge or consent."  (*Id*. at 6.)  Plaintiff claims that she "never engaged in any business

---

[1] The Court only recounts the alleged facts that are germane to resolving Plaintiff's claims.

1  dealings with Defendants RGS and Michael Barrist and does not hold any accounts or credit with

2  them." (*Id*.)

3       Plaintiff proceeded to research RGS online and learned that RGS is a debt collector and

4  was involved in a data breach in May of 2023. The breach exposed the personal information of

5  hundreds of thousands of individuals connected to RGS's debt collection efforts. (*Id*.) In her

6  Amended Complaint, Plaintiff summarizes a public notice released by RGS, which states that the

7  company sent out data breach notifications "to all individuals whose information was affected by

8  the recent data security breach." (*Id*. at 8.) Plaintiff asserts that RGS "never notified the Plaintiff

9  of this data breach." (*Id*. at 7.) Nevertheless, she claims that RGS breached "her sensitive and

10  valuable data." (*Id*. at 8.)

11       Plaintiff commenced litigation against RGS in small claims court, alleging that RGS had

12  accessed her credit reports and sensitive personal information without a permissible purpose and

13  committed identity theft and defamation. (*Id*. at 6–8.) Plaintiff also filed a complaint with the

14  Consumer Financial Protection Bureau ("CFPB") on April 2, 2024, alleging that RGS had pulled

15  her consumer credit reports "without her knowledge or consent, thereby committing identity

16  theft." (*Id*. at 9.) RGS responded to Plaintiff's CFPB complaint on April 3, 2024, stating that

17  RGS had "created an RGS account in the Plaintiff's name for an alleged ATT account." (*Id*.)

18  Plaintiff claims that "[o]nly at this time did Plaintiff realize that RGS was a debt collector and

19  attempting to collect on an unverified alleged ATT account." (*Id*. at 10.) On April 3, 2024,

20  Plaintiff called AT&T and spoke with a representative on a recorded line. (*Id*.) The

21  representative informed her "that her ATT credit account was never sent to RGS." (*Id*.)

22       On April 8, 2024, Plaintiff received a letter from RGS' attorney, which was dated March

23  28, 2024. (*Id*. at 11.) The letter stated:

24

In the complaint, you asserted RGS violated the law regarding an ATT account in your name, RGS internal account ending in ***2595 ("the Account"). We have investigated the matter and do not discern any basis for liability. Nonetheless, RGS has made the business decision to cease collecting the Account. To the extent RGS credit reported the Account, RGS has contacted the credit reporting agencies and requested they delete any RGS tradeline associated with the Account. We trust this addresses the issues raised in your Letter, but if you have any questions or concerns, please contact me directly.

(*Id*. at 9.)  Plaintiff claims that she "had no prior knowledge of this debt until receiving notice from RGS' attorney." (*Id*. at 11.)  Plaintiff dismissed her claim in small claims court and instead prepared to sue RGS in federal court. (*Id*. at 8.)

In July of 2024, Plaintiff received an email from CreditWise "indicating a change to her Experian credit report." (*Id*. at 12.)  Plaintiff viewed the report and learned that "RGS had reported a derogatory tradeline to Experian" dated "April 21, 2022, April 28, 2022, May 5, 2022, and May 11, 2022." (*Id*.)  The tradeline "indicated an 'Account Balance' of $519 for an alleged 'Derogatory Account' with RGS." (*Id*.)  Plaintiff claims "this discovery reveals that RGS has been reporting false, derogatory, and unverified information to the credit reporting agencies from approximately February 13, 2021, to the present date going on for three and a half years." (*Id*. at 12.)  Plaintiff alleges that "[t]his false reporting significantly impacted the Plaintiff's creditworthiness, shedding light on the reasons behind her denials for credit and housing, as well as the higher interest rates she has faced." (*Id*.)

Although Plaintiff claims that "[t]he erroneous placement of this tradeline constitutes a defamatory statement that falsely represents the Plaintiff as a debtor who has defaulted on a financial obligation to Defendants RGS and Michael Barrist," Plaintiff does not deny ownership of the AT&T account in question. (*Id*. at 16.)  Indeed, the facts in the Complaint indicate that Plaintiff did own the AT&T account, as she was able to speak to a representative about it and allegedly confirm it was not referred to RGS. (*Id*. at 10.)  Accordingly, based on a holistic

reading of the Amended Complaint, it appears that the gravamen of Plaintiff's claim against RGS is that the company allegedly had no right to access her credit reports and collect on the debt, not that she did not own the AT&T account.  Likewise, Plaintiff's core complaint against TransUnion and Experian is that the companies "authorized access to Plaintiff's consumer reports and file to RGS without verifying that RGS had a permissible purpose" and without her consent.  (*Id*. at 6; *see also id*. at 22–23, 26.)

Plaintiff states that she "reported Defendants Radius Global Solutions' conduct to the Tumwater Police Department" on July 29, 2024.  (*Id*. at 17.)  She subsequently sent "formal notice" to the Washington State Attorney General's Office, the Thurston County Sheriff's Office, the Federal Trade Commission, and the Consumer Financial Services Bureau "urging these bodies to initiate investigations" in August of 2024.  (*Id*.)  Plaintiff brought suit in this Court on August 8, 2024.  (Dkt. No. 1.)

**B.  Procedural Background**

Plaintiff brings the following claims:

Against all Defendants

- Violations of the FCRA (alleging violations of 15 U.S.C. §§ 1681b, §1681q, and 1681a(q)(3) and invoking the civil remedies provided for willful and negligent noncompliance with the FCRA's requirements under 15 U.S.C. §§ 1681n and 1681*o*)

- Violations of the WFCRA (invoking Wash. Rev. Code § 19.182.020)

- Identity theft (invoking Wash. Rev. Code § 19.35.020)

- Defamation (invoking Wash. Rev. Code § 4.36.120)

- Violations of the WCPA (invoking Wash. Rev. Code § 19.86.020)

- Invasion of privacy by intrusion upon seclusion

Against RGS and Barrist

- Violations of the FDCPA (invoking 15 U.S.C. §§ 1692d, 1692f, 1692e)

- Negligence

- Breach of confidentiality (invoking Wash. Rev. Code § 42.56.590)

- Infliction of emotional distress

- Invasion of privacy

- "Individual Liability of CEO Michael Barrist" (*see* Dkt. No. 14 at 56)

Against TransUnion and Experian

- Violations of the FCRA (alleging violations of 15 U.S.C. § 1681e(b) and invoking the civil remedies provided for willful and negligent noncompliance with the FCRA's requirements under 15 U.S.C. §§ 1681n and 1681*o*)

- Violations of the GLBA (invoking 15 U.S.C. §§ 6801–09)

(*See* Dkt. 14 at 23–64.)

Experian asserts that "Plaintiff fails to plausibly allege a claim for relief on the face of the First Amended Complaint, thus, the First Amended Complaint should be dismissed, in full, with prejudice." (Dkt. No. 26 at 3.) Likewise, RGS and Barrist argue that "all of Plaintiff's claims fail as matter of law" and therefore "should be dismissed as to the RGS Defendants." (Dkt. No. 18 at 3.)

### III    DISCUSSION

#### A.  Legal Standard

Defendants move to dismiss Plaintiff's First Amended Complaint (Dkt. No. 14) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl.*

1    *Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotations and citations omitted).

2    Accordingly, "only a complaint that states a plausible claim for relief survives a motion to

3    dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[W]here the well-pleaded facts do not

4    permit the court to infer more than the mere possibility of misconduct, the complaint has

5    alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id*. at 679 (quoting

6    Fed. Rule Civ. Proc. 8(a)(2)); *see also id*. at 678–79 ("Rule 8 marks a notable and generous

7    departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock

8    the doors of discovery for a plaintiff armed with nothing more than conclusions.").

9        On a motion to dismiss for failure to state a claim, the Court must accept as true all well-

10   pleaded factual allegations and construe the allegations in favor of the non-moving party.  *See

11   Wood v. City of San Diego*, 678 F.3d 1075, 1080 (9th Cir. 2012).  However, "the tenet that a

12   court must accept as true all of the allegations contained in a complaint is inapplicable to legal

13   conclusions." *Iqbal*, 556 U.S. at 678.  Complaints filed pro se are "to be liberally construed"; "a

14   pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal

15   pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v.

16   Gamble*, 429 U.S. 97, 106 (1976); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)

17   ("*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment

18   of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating

19   them under *Iqbal*.").  "Unless it is absolutely clear that no amendment can cure the defect, [] a

20   pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend

21   prior to dismissal of the action."  *Lucas v. Dep't of Corr*., 66 F.3d 245, 248 (9th Cir. 1995).

22   However, leave to amend is properly denied if amendment would be futile.  *See Ventress v.

23

24

*Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010); *Lipton v. Pathogenesis Corp*., 284 F.3d 1027, 1039 (9th Cir. 2002).

### B. Analysis

1. <u>FCRA Claims Against All Defendants (15 U.S.C. §§ 1681b, §1681q, and 1681a(q)(3))</u>

   a.  15 U.S.C. § 1681b

Section 1681(b)(f) of the FRCA prohibits using or obtaining a consumer credit report without a permissible purpose.  *See* 15 U.S.C. § 1681b(f); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2009).  Section 1681b(a) enumerates the circumstances under which a consumer reporting agency (CRA) may furnish consumer credit reports.  5 U.S.C. § 1681b(a).  These permissible purposes include furnishing a report "[t]o a person which it has reason to believe [] intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer[.]"  15 U.S.C. § 1681b(a)(3)(A).  Accordingly, if a CRA "has reason to believe" that the entity they provide a report to is intending to collect on a debt, the CRA has a permissible purpose to furnish the report under the FRCA.  *Id*.  Likewise, a plain reading of the FCRA indicates that "requesting a credit report with the intent to collect on a debt is among the 'permissible purposes' listed in the FCRA."  *Thomas v. U.S. Bank, N.A*., 325 F. App'x 592, 593 (9th Cir. 2009).

To state a claim for a § 1681b violation, a plaintiff must allege that the Defendant used or obtained the plaintiff's credit report without a permissible purpose and must also put forth facts to show that the violation was willful or negligent.  *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 671 (9th Cir. 2020) ("a consumer may succeed on a claim under the FCRA only if he or she shows that the defendant's violation was negligent or willful.").  This is because civil

liability for violations of the FCRA are actionable under 15 U.S.C. §§ 1681n and 1681*o*, which establish "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" and "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" respectively.  "To prove a negligent violation, a plaintiff must show that the defendant acted pursuant to an objectively unreasonable interpretation of the statute." *Marino,* 978 F.3d at 673.  "To prove a willful violation, a plaintiff must show not only that the defendant's interpretation was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless." *Id.*  Thus, the FCRA is not a strict liability statute; "a creditor who violates [15 U.S.C. § 1681b] is not necessarily liable to the consumer." *Id.* at 671.

Plaintiff alleges that Defendants Experian and RGS "were aware or should have been aware of their obligations under the FCRA to authorize access or obtain access to consumer credit reports only for permissible purposes, but they knowingly, willfully and negligently failed to comply with 15 U.S.C. §1681b." (Dkt. No. 14 at 32.)  Plaintiff further argues that because "Defendants had absolutely no direct consent from Plaintiff to authorize access or obtain access to any information from her credit reports and files," they are "in direct violation of 15 U.S.C. §1681b." (*Id.* at 30.)

Experian asserts that "Plaintiff's claims are based on a lack of adequate factual pleading and misinterpret the legal standard" because "Plaintiff's claim hinges on the mistaken belief that reporting information on her consumer report without her consent violates the FRCA." (Dkt. No. 26 at 3.)  Experian is correct that Plaintiff cannot successfully plead a §1681b violation

1   based on lack of consent alone.  As numerous courts have affirmed, "[w]hen a permissible

2   purpose exists, parties may obtain, and consumer reporting agencies may furnish, consumer

3   reports without the consumers' permission or over their objection."  *Baker v. Trans Union LLC*,

4   No. CV 07-8032-PCT-JAT, 2008 WL 4838714, *4 (D. Ariz. Nov. 6, 2008) (internal quotations

5   omitted); *see also White v. Experian Information Sols., Inc*., No. 2:23-CV-05591-DSF-PVC,

6   2024 WL 3075252, *2 (C.D. Cal. May 16, 2024) ("When a permissible purpose exists, a user can

7   obtain a consumer report without the consumer's express authorization or understanding that the

8   report will be requested"); *Jones v. Best Serv. Co*., No. CV 14-9872 SS, 2017 WL 490902, *7–8

9   (C.D. Cal. Feb. 6, 2017), aff'd, 700 F. App'x 580 (9th Cir. 2017) ("Plaintiff's FCRA claims not

10  only consist largely of legal conclusions, but are almost entirely predicated on the erroneous

11  assertion that Defendant was required to secure Plaintiff's express consent to access his credit

12  report for any reason. . . . However, a credit report can be accessed without a consumer's

13  permission for other 'permissible purposes' under the FCRA.").  Accordingly, because Experian

14  had a "permissible purpose" under the FCRA, Plaintiff's consent was not required, Experian

15  argues.

16          Specifically, Experian explains that it had a permissible purpose to furnish the report

17  because it held the reasonable belief that RGS—a debt collector—was collecting on Plaintiff's

18  debt.  (Dkt. No. 26 at 6.)  As Experian points out, "Plaintiff's own allegations indicate that

19  Experian reasonably believed RGS intended to use Plaintiff's information to review her

20  account—a permissible purpose under the statute."  (*Id*.)  In response, Plaintiff advances a

21  statutory interpretation argument focused on the definition of the word "account" in the FRCA.

22

23

24

1    (Dkt. No. 34 at 7–9.)[2]  Plaintiff argues: "the definition of 'account' does not include an account

2    such as a credit card open end credit account or an alleged AT&T account, but does include a

3    demand deposit account, savings deposit or other asset account."  (Dkt. No. 9 at 23.)  Thus,

4    Plaintiff argues that because the AT&T "account" does not fall within the purview of the FCRA

5    definition, Experian did not have a "permissible purpose" to furnish the report.  *See* 5 U.S.C. §

6    1681b(a)(3)(A).  Plaintiff cites no caselaw in support of her argument, which is foreclosed by

7    ample precedent indicating that collection of credit debt is a permissible purpose under the

8    FCRA.[3]

9           Indeed, Plaintiff is far from the first litigant to advance this exact statutory interpretation

10   argument.  As one district court summarized, "[t]he Court understands the basis of Plaintiff's

11   arguments based on the literal words of the statutory provisions. But this same argument has

12   been tried around the country, and as far as the Court can tell, and as far as the parties have

13   shown in their briefs, it has been universally rejected by every court that has considered it."

14   *Middlebrooks v. Sacor Fin., Inc.*, No. 1:17-CV-0679-SCJ-JSA, 2017 WL 8186719, *4  (N.D. Ga.

15   Aug. 28, 2017) (discussing the "account" argument at length and concluding that "[i]n light of

16   the broader context of the statute, the term "account" as used in § 1681b(a)(3) must be

17   interpreted to include debts such as credit card accounts and student loans").  In *Rawls v.*

18   *Convergent Outsourcing*, the plaintiff similarly asserted that "his T-Mobile account [was] not an

19   'account' for purposes of the FCRA."  *Rawls v. Convergent Outsourcing, Inc.*, No. 1:23-CV-

20

21   [2] In response, Plaintiff also argues that Experian violated 5 U.S.C. § 1681e(a).  As Plaintiff does
     not plead this cause of action in the First Amended Complaint, the Court does not address it.
22   The Court addresses Plaintiff's argument that Experian violated 5 U.S.C. § 1681e(b) *infra*.

23   [3] Plaintiff directs the Court to cases in which Plaintiffs voluntarily dismissed their claims with
     prejudice upon reaching a settlement agreement; these actions do not give rise to persuasive or
24   binding precedent.

ORDER ON MOTIONS TO DISMISS (DKT. NOS. 18, 26) - 11

5465-SEG-CCB, 2024 WL 3833854, *5 (N.D. Ga. July 25, 2024), report and recommendation

adopted, No. 1:23-CV-05465-SEG-CCB, 2024 WL 4251738 (N.D. Ga. Aug. 14, 2024).  The

Court rejected this argument, noting that "Defendant is a debt collector, as Plaintiff recognizes in

his complaint, [] and Defendant was collecting a debt from an account that Plaintiff allegedly has

with T-Mobile."  *Id*. at *3 n.2.  Accordingly, the court concluded that "Defendant had a

permissible purpose to obtain Plaintiff's consumer report, and Plaintiff fails to state a claim

under 15 U.S.C. § 1681b." *Id*. at *6; *see also Fritz v. Cap. Mgmt. Servs*., LP, No. 2:12-CV-1725,

2013 WL 4648370 (W.D. Pa. Aug. 29, 2013) (collecting cases rejecting the "account"

argument); *Harris v. NCO Fin. Sys*., No. CIV.A. RDB-13-0259, 2013 WL 6858852, *3 (D. Md.

Dec. 23, 2013) ("The Plaintiff argues that her delinquent credit card account is not an "account"

under the FCRA. . . . The Plaintiff's argument has been universally rejected by every court that

has directly addressed it."); *Valle v. RJM Acquisitions*, LLC, No. 3:12-CV-00957, 2015 WL

739855, *3 (D. Conn. Feb. 19, 2015) (same).[4]

Accordingly, the AT&T account Plaintiff describes in the complaint falls squarely within

the accepted definition of "account" for the purposes of permissible collection activity.  Plaintiff

has not pleaded *any* facts that would provide a plausible basis to conclude that Experian provided

Plaintiff's information for any reason other than a permissible belief that RGS—a debt

collector—was collecting on the account.  Finally, Plaintiff has provided no facts to suggest that

Experian acted willfully and negligently.  Thus, even if Experian lacked a permissible purpose,

Plaintiff has alleged no facts to indicate its conduct would represent more than "good faith

---

[4] Moreover, the Ninth Circuit affirmed that requesting a credit report to collect a debt is a
permissible purpose under the FCRA in a case that itself involved Visa credit card debt.  *See
Thomas* 325 F. App'x at 593 (affirming *Thomas v. U.S. Bank, N.A*., No. CV 05-1725-MO, 2007
WL 764312 (D. Or. Mar. 8, 2007)).

1    error." *In re Banner Bank*, No. 820CV02304JLSJDE, 2022 WL 19239736, at 4 (C.D. Cal. Dec.

2    16, 2022) (citing B*eckstrom v. Direct Merch.'s Credit Card Bank*, 2005 WL 1869107, at *3 (D.

3    Minn. Aug. 5, 2005)).  In this way, Plaintiff has both failed to show lack of permissible purpose

4    and the required mens rea.  For these reasons, Plaintiff's 15 U.S.C. § 1681b claim against

5    Experian is DISMISSED without prejudice.

6         RGS argues that it is not liable under § 1681b because Plaintiff "does not dispute owning

7    the debt" and admits that RGS is a debt collector—as such, RGS asserts it "had a permissible

8    purpose to access Plaintiff's credit report in connection with its debt collection efforts."  (Dkt.

9    No. 18 at 3, 5.)  In response, Plaintiff once more advances a statutory interpretation argument

10   based on the definition of "account."  (Dkt. No. 30 at 14–15.)  This argument fails for the reasons

11   described *supra*.  Collection of credit debt is a permissible purpose to access an account under

12   the FCRA.  *See Thomas* 325 F. App'x at 593.  Plaintiff further argues that "because AT&T

13   confirmed that they did not transfer the alleged 'Account' in Plaintiff's likeness to RGS," RGS

14   did not have a right—or permissible purpose—to collect on the debt.  (Dkt. No. 30 at 18.)  RGS

15   maintains that its permissible purpose was debt collection on the AT&T account, as stated in the

16   letter RGS's counsel sent to plaintiff.  (Dkt. No. 35 at 3.)  Finally, Plaintiff represents that she

17   "does not confirm or deny ownership of the [AT&T] account."  (*Id*. at 5.)  In reply, Defendant

18   points out that "to have obtained the alleged information from AT&T" in response to RGS'

19   letter, Plaintiff needed to have been a customer with an account—facts indicating her ownership

20   of the account in question.  (Dkt. No. 35 at 4.)

21        To succeed on her claim against RGS under § 1681b, Plaintiff must allege, with sufficient

22   factual support, that RGS did not have a permissible purpose for requesting her credit report.  *See*

23   *Thomas* 325 F. App'x at 593.  Additionally, "[m]erely stating that the violation was 'willful' or

24

'negligent' is insufficient"; instead, the Plaintiff must aver facts from which the Court can infer that the Defendants possessed the requisite mens rea when they requested the report. *Braun v. United Recovery Sys.*, LP, 14 F. Supp. 3d 159, 167 (S.D.N.Y. 2014). Whether RGS had business dealings with Defendant is not relevant. The Ninth Circuit has affirmed that "§ 1681b(a)(3)(A) allows a third-party to obtain a consumer's credit report without having a previous relationship with the consumer and without the consumer initiating the transaction." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 487 (9th Cir. 2019); *see also Pyle v. First Nat. Collection Bureau*, No. 1:12-CV-00288-AWI, 2012 WL 1413970, *3 (E.D. Cal. Apr. 23, 2012) (the fact that Plaintiff did not have business dealings or accounts with the Defendant did not indicate that Defendant's activities were not permissible); *Egbert v. Sw. Collection Servs., Inc.*, No. SA CV 13-00421-DOC, 2013 WL 3188850, *3 (C.D. Cal. June 21, 2013) (same).

"Courts have been especially skeptical of [FCRA] claims brought against debt collection agencies, given that debt collection agencies typically request credit reports for the permissible purpose of seeking the information in connection with the consumer's debt." *Thomas v. Fin. Recovery Servs.,* No. EDCV 12-1339-PSG-OPx, 2013 WL 387968, at *4 (C.D. Cal. Jan. 31, 2013) (collecting cases). Thus, conclusory allegations that a debt collector did not have a permissible purpose for obtaining a credit report are insufficient to state a claim upon which relief can be granted. *See Wise v. Experian Info. Sols., Inc.*, No. CV 23-5513-KK-RAOX, 2024 WL 3337128 (C.D. Cal. June 18, 2024) (collecting cases). Instead, Courts typically look to whether a Plaintiff has pled that they did not own the underlaying debt and/or that the Defendant was not a debt collection agency acting in conjunction with collection activities. *See Pyle v. First Nat. Collection Bureau*, No. 1:12-CV-00288-AWI, 2012 WL 1413970, *3 (E.D. Cal. Apr. 23, 2012) (dismissing FCRA claim because "Plaintiff fail[ed] to establish that Defendant was

1    not, in fact, a collection agency, or that Plaintiff did not owe any debt that Defendant was

2    seeking to collect on behalf of another entity"); *Salmas v. Portfolio Recovery Assocs.*, LLC, No.

3    SACV 13-0575-DOC, 2013 WL 6182614 (C.D. Cal. Nov. 25, 2013) (dismissing FCRA claim

4    because "[Plaintiff] does not allege that no such debt exists, or that Portfolio is not a debt

5    collector"); *cf. Nayab v. Cap. One Bank*, 942 F.3d 480, 496 (9th Cir. 2019) (holding plaintiff

6    adequately alleged defendant lacked permissible purpose for obtaining credit report where

7    plaintiff claimed they were "not aware of any collection accounts, including any accounts that

8    were purchased or acquired by Defendant that would permit Defendant to obtain Plaintiff's

9    credit report as provided in 15 U.S.C. § 1681b(a)(3)(A)").

10        Here, Plaintiff does not allege that she did not own the underlaying debt; nor does she

11    dispute that RGS is a debt collector.  Plaintiff does, however, appear to allege that the debt was

12    not assigned to RGS for collection.  Plaintiff emphasizes that "upon contacting AT&T in April

13    2024 regarding the alleged account, Plaintiff was informed that AT&T never transferred any

14    accounts in her name to RGS."  (Dkt. No. 30 at 5.)  Plaintiff argues that this communication with

15    AT&T establishes that RGS did not have a permissible purpose to access her credit information.

16    However, Plaintiff provides no facts beyond the phone call to suggest RGS harbored any purpose

17    *other* than debt collection.  Instead, Plaintiff argues that "RGS has been named as a defendant in

18    over 401 lawsuits, including several class action suits in the federal court system alone" and

19    suggests "[t]his data confirms that Plaintiff's claims are not farfetched."  (Dkt. No. 30 at 4)

20    (internal quotations removed).  Yet separate suits against RGS have no bearing on whether

21    Plaintiff is entitled to relief.  Any reference to other lawsuits is a conclusory argument that

22    cannot substitute for the requirement that Plaintiff allege sufficiently detailed facts to state a

23    claim.

24

1    Ultimately, Plaintiff's call with the AT&T representative alone is not sufficient to plead a

2  violation of § 1681b, especially because Plaintiff's Amended Complaint also includes a letter

3  from RGS's attorney stating that it *was* collecting on the debt. (Dkt. No. 14 at 9.) Moreover,

4  Plaintiff alleges no facts that would establish negligence or willfulness beyond conclusory

5  allegations that RGS acted negligently and willfully. A complaint that fails to allege specific

6  facts to satisfy the state-of-mind element must fail. *Marino*, 978 F.3d at 673. Based on the facts

7  in the Amended Complaint, RGS's conduct—even assuming it constituted a violation—could

8  just as likely have been "merely careless," rather than negligent. *Id.; see also Perl v. Plains*

9  *Com. Bank,* No. 11 CIV. 7972 KBF, 2012 WL 760401, *2 (S.D.N.Y. Mar. 8, 2012) (dismissing

10 plaintiff's claim, despite plaintiff sufficiently alleging defendant lacked a permissible purpose,

11 because "plaintiff's assertion that defendant's state of mind in doing so was willful is

12 conclusory"); *Abbink v. Experian Info. Sols., Inc*., No. SACV191257JFWPJWX, 2019 WL

13 6838705, *5 (C.D. Cal. Sept. 20, 2019). Accordingly, Plaintiff's claim under 1681b(f) against

14 RGS is DISMISSED without prejudice.

b. 15 U.S.C. § 1681q

16    15 U.S.C. s 1681q provides: "[a]ny person who knowingly and willfully obtains

17 information on a consumer from a consumer reporting agency under false pretenses shall be

18 fined not more than $5,000 or imprisoned not more than one year, or both." The Ninth Circuit

19 has concluded that § 1681q "does state a 'requirement imposed under this subchapter,'" meaning

20 that "[i]ts violation . . . forms a basis of civil liability under either § 1681n or § 1681O." *Hansen*

21 *v. Morgan*, 582 F.2d 1214, 1219 (9th Cir. 1978). "The standard for determining when a

22 consumer report has been obtained under false pretenses will usually be defined in relation to the

permissible purposes of consumer reports which are enumerated in 15 U.S.C. § 1681b," as a CRA may only issue a report for the purposes listed in § 1681b. *Id.*

Experian asserts that because "Plaintiff's claim is based on the allegation that RGS *obtained* her credit report from Experian," Plaintiff's § 1681q claim "can only be used to establish RGS's liability, not Experian's." (Dkt. No. 26 at 6) (emphasis added).  In response, Plaintiff "withdraws her [§ 1681q] claim against Experian[.]" (Dkt. No. 34 at 12.)  Accordingly, Plaintiff's claim against Experian under § 1681q is DISMISSED with prejudice.

RGS does not brief § 1681q liability separately from § 1681b liability, likely because courts are in agreement that "if a user of information seeks consumer information for an impermissible purpose, it must also do so under false pretenses." *Nogali v. Transcon Fin., Inc.*, No. EDCV1400206VAPDTBX, 2014 WL 12968085 (C.D. Cal. July 3, 2014).  Accordingly, a § 1681q violation follows from a § 1681b violation and a "permissible purpose" forms a complete defense to both causes of action. *See Hansen*, 582 F.2d at 1219.  The Court concluded *supra* that Plaintiff failed to make out a prima facie claim that RGS violated § 1681b.  Thus, Plaintiff's claim against RGS under § 1681q is DISMISSED without prejudice.

c.   15 U.S.C. § 1681a(q)(3)

15 U.S.C. § 1681a(q)(3) "merely defines the term 'identity theft' under the FCRA and neither articulates the duties of a consumer reporting agency in responding to identity theft nor bestows a right of action." *Rivera v. Transunion*, No. 3:22-CV-1038 (MPS), 2022 WL 17370506, *3 (D. Conn. Oct. 31, 2022).  Accordingly, this citation does not give rise to a viable claim under the FCRA.  To the extent Plaintiff attempted to plead claims under § 1681a(q)(3), these claims are DISMISSED with prejudice as against Experian and RGS.

2.   <u>FCRA Claim Against Experian (15 U.S.C. §1681e(b))</u>

15 U.S.C. § 1681e(b) establishes: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  A violation of 1681e(b) is actionable under either § 1681n or § 1681*o*.  *Guimond v. Trans Union Credit Info. Co*., 45 F.3d 1329, 1332 (9th Cir. 1995).  "In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information."  *Id*. at 1333.  However, the FCRA is not a strict liability statute; thus, "an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures."  *Id*.

Plaintiff alleges that "Experian failed to follow reasonable procedures to ensure maximum possible accuracy of the information concerning Plaintiff, in violation of §1681e(b)." (Dkt. No. 114 at 60.)  Experian responds that "Plaintiff has not identified any information in her consumer file that she claims is inaccurate," and instead puts forth conclusory and formulaic allegations that fail to meet the pleading standard.  (Dkt. No. 59 at 2.)  In reply, Plaintiff once more argues that the AT&T account does not constitute an "account" under the FCRA.  (Dkt. No. 60 at 1–2.)  Plaintiff also advances a new argument statutory interpretation argument based on the definition of "credit transaction."  (*Id*. at 2.)  Plaintiff further emphasizes that "Experian failed to verify the accuracy of the tradeline furnished by RGS before allowing it to be placed on her report" and "concealed the tradeline from Plaintiff's eyes only consumer credit report[.]" (*Id*. at 3.)

To plead a § 1681e(b) violation, "a consumer must first make a prima facie showing of inaccurate reporting by the CRA."  *Shaw v. Experian Info. Sols., Inc*., 891 F.3d 749, 756 (9th Cir. 2018) (internal quotations removed).  Information is inaccurate if it is "patently incorrect" or

is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id*. (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009). "Once the consumer has made a prima facie showing of inaccuracy, he or she must next show that the consumer reporting agency failed to follow reasonable procedures to assure the maximum possible accuracy of the information. 15 U.S.C. § 1681e(b)." *Wilson v. Equifax Info. Servs*., LLC, No. 219CV00055RFBNJK, 2020 WL 2771184, *3 (D. Nev. May 27, 2020).

Plaintiff puts forth no facts about *what* specific information was inaccurate or how the inaccurate information was reported. (*See generally* Dkt. No. 14.) The conclusory, threadbare assertion that Experian published "false statements in her consumer report" is not sufficient to meet the pleading standard, as Plaintiff does not explain what "statements" were "false." (*Id*. at 18.) Indeed, Plaintiff does not deny ownership of the AT&T account, which is the only specific information allegedly "reported" by Experian. (*See generally* Dkt. No. 14.) Likewise, Plaintiff's claim that Experian "did not verify the accuracy" of the tradeline does not suggest that the information itself was "patently incorrect" or "misleading." *Shaw*, 891 F.3d at 756. Furthermore, Plaintiff fails to show that Experian followed unreasonable procedures; the Complaint does not put forth any *facts* related to allegedly unreasonable policies or procedures. (*See generally* Dkt. No. 14.)

Plaintiff's statutory interpretation argument is likewise unavailing. The FCRA allows a person to access a credit report "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A). Plaintiff argues that "the alleged AT&T account" is "not a credit transaction or a permissible account, disqualifying it from permissible purpose under the FCRA." (Dkt. No. 60 at 2.) The FCRA defines "credit" as

1    "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its

2    payment or to purchase property or services and defer payment therefor." 15 U.S.C. §§

3    1681a(r)(5); 1691a(d). The AT&T account meets this definition. As a court considering the

4    same argument about a Verizon account explained: "The Verizon invoice reflects a previous

5    balance that was past due[,]" which "reflects a debt incurred for services and thus constitutes a

6    credit transaction." *Layne-Williams v. Radius Glob. Sols., LLC*, No. 22CV340 (DLC), 2022 WL

7    17251665, *3 (S.D.N.Y. Nov. 28, 2022). So too here.[5]

8         Accordingly, as Plaintiff has failed to put forth concrete factual allegations about what

9    specific information is inaccurate and how Experian failed to follow reasonable procedures,

10   Plaintiff's § 1681e(b) claim does not survive a motion to dismiss. *See Iqbal*, 556 U.S at 678 ("A

11   claim has facial plausibility when the plaintiff pleads factual content that allows the court to

12

13

---

14   [5] Plaintiff cites *Pintos v. Pacific Ceditors Ass'n* in support of the argument that the AT&T

15   account is not a "credit transaction." (Dkt. No. 59 at 3); *see* 565 F.3d 1106 (9th Cir. 2009),
     *opinion amended and superseded on denial of reh'g*, 605 F.3d 665 (9th Cir. 2010). However,

16   the case is readily distinguishable. *Pintos* involved a plaintiff whose car was towed. *Id.* at 1110.
     The towing company had obtained a lien on the costs of towing and impound and brought a

17   deficiency claim against the plaintiff, which was then transferred to the defendant debt collection
     agency. *Id.* The *Pintos* court addressed the question of whether "the transaction was 'a credit

18   transaction involving' [the plaintiff]," and thus constituted permissible grounds for the collection
     agency to obtain the report. *Id.* at 1112 (quoting 15 U.S.C. § 1682b(a)(3)(A)). The court found

19   that someone is "involved in a credit transaction" within the meaning of the FCRA when she is
     "draw[n] in as a participant in the transaction" but not where she is "obliged to become

20   associated" with it. *Id.* Because the plaintiff was not involved as a participant in the transaction
     within the meaning of the FCRA, the defendant did not have a permissible purpose to use the

21   credit report. *Id.* at 1113 ("that Pintos owned the car that was towed did not mean that she
     initiated the credit transaction"). Here, the AT&T account in question is under Plaintiff's name

22   and Plaintiff does not deny ownership of it. Indeed, the facts alleged in Plaintiff's Complaint
     suggest that Plaintiff created the account with AT&T and ran up a balance that was—without her

23   knowledge—referred to RGS for collections. Thus, there is no indication that Plaintiff was not
     "involved" as a participant under *Pintos*.

24

1   draw the reasonable inference that the defendant is liable for the misconduct alleged.").

2   Plaintiff's 15 U.S.C. § 1681e(b) claim against Experian is DISMISSED without prejudice.

3         3.   FDCPA Claims Against RGS (15 U.S.C. §§ 1692e, 1692f, 1692d)

4         Plaintiff alleges that RGS violated the FDCPA "by making false, deceptive, and

5   misleading statements regarding an alleged debt, despite the Plaintiff having no business or

6   accounts with them." (Dkt. No. 14 at 34.)  Plaintiff further asserts that RGS violated the FDCPA

7   because they did not attempt any initial communication with her about the debt collection.  (*Id*.)

8   Specifically, she asserts that—under the FDCPA—RGS was required to provide her with notice

9   before placing a tradeline on her credit reports, which RGS did not do.  (*Id*. at 37.)  RGS

10  responds that Plaintiff fails to satisfy the elements of an FDCPA claim because she fails to allege

11  any collection activity arising from the debt.  (Dkt. No. 18 at 11.)  "Without any communications

12  from RGS seeking collection on the debt, there can be no violation of the FDCPA," RGS

13  concludes.  (*Id*.)

14        Under 15 U.S.C. § 1692e, a debt collector may not use any false, deceptive, or

15  misleading representation or means in connection with the collection of a debt by providing a

16  false representation of character, amount, or legal status of any debt.  Under 15 U.S.C. § 1692f, a

17  debt collector may not use unfair or unconscionable means to collect or attempt to collect any

18  debt. 15 U.S.C. § 1692d provides that a debt collector may not harass or abuse any person in

19  connection with the collection of a debt.  "To state a claim under the FDCPA, a plaintiff must

20  allege facts that establish that (1) the plaintiff has been the object of collection activity arising

21  from a consumer debt; (2) the defendant attempting to collect a debt qualifies as a 'debt

22  collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed

23  to perform a requirement imposed by the FDCPA."  *James v. Puget Sound Collections,* No. 22-

24

1    5237 RJB, 2022 WL 2357050, *2 (W.D. Wash. June 30, 2022); *see also Miller v. Bank of Am.,*

2    *Nat. Ass'n*, 858 F. Supp. 2d 1118, 1122 (S.D. Cal. 2012) ("To bring a FDCPA action against a

3    debt collector, the debt collector's misconduct must have occurred during an attempt to collect a

4    present debt.").

5           Courts in this circuit have concluded that the reporting of an account to a CRA does not

6    establish that a plaintiff was the "object of a collection activity" for the purposes of making out a

7    prima facie FDCPA case. *See Drake v. Enhanced Recovery Co*., LLC, No. 6:15-CV-01899,

8    2018 WL 1402586 (D. Or. Mar. 19, 2018). *Drake* involved a similar fact pattern to the alleged

9    FDCPA violations at issue. A delinquent AT&T account was placed with the defendant debt

10   collector for collection. *Id*. at *1. The account in question belonged to somebody by the same

11   name as the plaintiff—not the plaintiff himself—but the agency commenced collection activities

12   with the plaintiff, believing that he owned the debt. *Id*. Accordingly, the plaintiff informed the

13   defendant that the AT&T account did not belong to him, and the defendant informed the plaintiff

14   it would not direct any further collection attempts on the account to him. *Id*. The plaintiff

15   asserted that the defendant violated the FDCPA because it reported the delinquent AT&T

16   account to CRAs as "disputed" after the plaintiff had informed them that it did not belong to him.

17   The court first found that "the reporting of the Account to the CRAs was not in connection to the

18   collection of the account" because "the recipient of the alleged 'false, deceptive or misleading

19   representation' was not the debtor, but rather the CRAs." *Id*. at *3. Moreover, the Court found

20   that the information conveyed was not actually false—the defendant reported, accurately, that the

21   account was "disputed"—which further frustrated the plaintiff's 15 U.S.C. § 1692e claim.

22          So too here. The recipient of the allegedly false information at issue was the CRAs, not

23   Plaintiff, as Plaintiff's Complaint makes very clear. Thus, the reporting of the AT&T account to

the CRAs was not in connection to the collection of the account for the purposes pleading an

FDCPA claim.  Moreover, as the *Rawls* court noted, "[a] plaintiff cannot baldly assert that an

alleged debt is not real or false without providing a factual basis explaining why that is so."

*Rawls*, 2024 WL 3833854, *3.  As in *Rawls*, "Plaintiff does not even allege what the false

information allegedly was, nor does [s]he allege any facts to show that the account between

Plaintiff and [AT&T] does not exist."  *Id*.  Plaintiff cannot plausibly plead a 15 U.S.C. § 1692e

violation when she has put forth no facts alleging what specifically was false about the AT&T

account information or otherwise supporting the FDCPA claim.  Likewise, Plaintiff has pled no

facts suggesting that RGS harassed her or employed unconscionable means to collect the debt—

by her account, RGS deleted the tradeline and ceased collecting on the account after Plaintiff

sent RGS a pre-litigation notice with her complaint.  (Dkt. No. 14 at 8.)  Plaintiff has also

provided no authority suggesting that RGS was required to provide her with notice before

placing a tradeline on her accounts.[6]  As Plaintiff has failed to establish collection activity and

not plead any specific factual claims that support the causes of action asserted, her FDCPA

claims fail as a matter of law and are DISSMISSED with prejudice.

    4.  <u>State Law Claims Against RGS</u>

---

[6] Under the FCRA, 15 U.S.C. § 1681s-2(a)(7), "[i]f *any financial institution that extends credit and regularly and in the ordinary course of business* furnishes information to a consumer reporting agency described in section 1681a(p) of this title furnishes negative information to such an agency regarding credit extended to a customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer."  (emphasis added).  This provision places a duty on creditors and not third-party debt collectors, however.  Moreover, 15 U.S.C. § 1681s-2(a)(7) does not provide a private right of action.  *See* 15 U.S.C. § 1681s-2(c); 15 U.S.C. § 1681s-2(d) (providing that subsection (a) "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title").

1    Plaintiff alleges that RGS is liable for identity theft, defamation of character, negligence,

2    breach of confidentiality, invasion of privacy, intrusion upon seclusion, infliction of emotional

3    distress, and for violating the WFCRA and the WCPA.  (*See* Dkt. No. 14.)  RGS asserts that

4    Plaintiff's state law claims "are all preempted by the FCRA" and therefore fail.  (Dkt. No. 18 at

5    8.)  Plaintiff responds that "state law claims can coexist with FCRA claims as long as they do not

6    conflict directly with the statute," emphasizing that state law is "designed to address specific

7    consumer rights not entirely encompassed by the FCRA."  (Dkt. No. 30 at 28.)  Accordingly,

8    before considering Plaintiff's individual claims, the Court must determine the extent to which the

9    FCRA preempts state law.

10    The FCRA contains two preemption provisions that restrict state law claims against

11    furnishers of information: 15 U.S.C. § 1681h(e) and 15 U.S.C. § 1681t(b)(1)(F).  The first

12    preemption provision, which was included when the statute was first enacted in 1968, provides:

> Except as provided in section 1681n and 1681o of this title, no consumer may bring any
> action or proceeding in the nature of defamation, invasion of privacy, or negligence with
> respect to the reporting of information against any consumer reporting agency, any user
> of information, or any person who furnishes information to a consumer reporting agency,
> based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title,
> or based on information disclosed by a user of a consumer report to or for a consumer
> against whom the user has taken adverse action based in whole or part on the report
> except as to false information furnished with malice or willful intent to injure such
> consumer.

18    15 U.S.C. § 1681(h)(e).  *See Buraye v. Equifax*, 625 F. Supp. 2d 894, 897 (C.D. Cal. 2008).

19    Congress amended the FCRA in 1996, adding a more general and sweeping preemption

20    provision.  *Shiver v. Ally Fin*., No. CV190189DOCGJSX, 2019 WL 2902500, *3 (C.D. Cal. Feb.

21    22, 2019).  Section 1681t(b)(1)(F) establishes that "[n]o requirement or prohibition may be

22    imposed under the laws of any State with respect to any subject matter regulated under section

23    1681s–2 of this title, relating to the responsibilities of persons who furnish information to

24

1  consumer reporting agencies[.]" 15 U.S.C. § 1681t(b)(1)(F).  Section 1681s–2 regulates the duty

2  of "furnishers of information to provide accurate information" to CRAs.  15 U.S.C. § 1681s–2.

3  "A 'furnisher of information,' for purposes of the FCRA, is an entity that transmits information

4  concerning a particular debt owed by a particular consumer to a credit reporting agency." *In re:*

5  *Banner Bank*, No. 820CV02304JLSJDE, 2022 WL 17886044 (C.D. Cal. Oct. 26, 2022) (quoting

6  *Thompson v. Pro. Collection Consultants*, 2013 WL 12114592, at *5 (C.D. Cal. Sept. 18, 2013)).

7      As multiple district courts have noted, "[i]t is hard to reconcile these two provisions

8  because the former, § 1681h(e), implies that certain state-law claims can proceed, while the

9  latter, § 1681t(b)(1)(F), appears to preempt all state law claims." *Haddock v. Countrywide Bank*,

10  NA, No. CV146452PSGFFMX, 2015 WL 9257316, *21 (C.D. Cal. Oct. 27, 2015); *see also*

11  *Buraye v. Equifax*, 625 F. Supp. 2d 894, 898 (C.D. Cal. 2008) ("Numerous courts have

12  recognized that there is an apparent tension between these two preemption provisions.").  Courts

13  have developed three approaches to interpreting the provisions—the so-called total preemption

14  approach, the statutory approach, and the temporal approach.  *Shiver*, 2019 WL 2902500, *3;

15  *Subhani v. JPMorgan Chase Bank, Nat. Ass'n,* No. C 12-01857 WHA, 2012 WL 1980416, *3

16  (N.D. Cal. June 1, 2012).  The Ninth Circuit has noted the "disarray" but declined to adopt an

17  approach.  *Gorman v. Wolpoff & Abramson*, LLP, 584 F.3d 1147, 1167 (9th Cir. 2009)

18  ("Attempting to reconcile the two sections has left district courts in disarray . . . . In the end, we

19  need not decide this issue.").  However, "[t]he majority of courts in the Ninth Circuit have

20  favored the total preemption approach, determining that § 1681t(b)(1)(F) totally preempts all

21  state statutory and common law causes of action which fall within the conduct proscribed under

22  § 1681s–2." *Shiver*, 2019 WL 2902500, *3 (internal quotations removed) (collecting cases); *see*

23  *also Subhani* 2012 WL 1980416, at *3 (collecting cases).  This accords with the conclusion of

24

1   the circuit courts that have addressed this issue, which have also found § 1681t(b)(1)(F)

2   completely preempts statutory and common law causes of action predicated on the conduct of

3   furnishers of information regulated under Section 1681s–2.  *See Purcell v. Bank of America*, 659

4   F.3d 622, 624–25 (7th Cir. 2011); *Macpherson v. JPMorgan Chase Bank, N.A*., 665 F.3d 45, 48

5   (2d Cir. 2011).  Finding this weight of authority persuasive, the Court adopts the total

6   preemption approach.

7           a.   Defamation

8           Plaintiff alleges that RGS "published false statements about the Plaintiff in her consumer

9   reports and files," specifically "a false statement that Plaintiff is a debtor who has defaulted on a

10  financial obligation."  (Dkt. No. 14 at 43.)  Plaintiff asserts that this constitutes defamation by

11  libel under Washington Revised Code § 4.36.120.  (*Id*.)  Because this claim is a state law cause

12  of action brought against RGS in its capacity as a furnisher of information under the FCRA, it is

13  preempted.  *C.f. Shriver,* 2019 WL 2902500, *3 (defamation claim preempted by FCRA);

14  *Grigoryan v. Bank of Am. Corp*., No. ED CV 12-01219 MMM, 2012 WL 10423215, *12 (C.D.

15  Cal. Dec. 31, 2012) (defamation claim preempted by FCRA); *Johnson v. JP Morgan Chase Bank

16  DBA Chase Manhattan*, 536 F. Supp. 2d 1207, 1215 (E.D. Cal. 2008) ("15 U.S.C.

17  § 1681t(b)(1)(F) preempts [Plaintiff's] defamation claim based on allegations that [Defendant]

18  reported information to a credit reporting agency"); *Buraye*, 625 F. Supp at 901 ("Based on the

19  plain language of § 1681t(b)(1)(F), the court concludes that [Plaintiff's] state law negligence and

20  defamation claims are preempted by the FCRA.").  Accordingly, Plaintiff's defamation claim as

21  against RGS is DISMISSED WITH PREJUDICE.

22          b.   Negligence, invasion of privacy, breach of confidentiality, and infliction of
                 emotional distress

23

24

1    Plaintiff asserts that RGS was involved in a data breach and her "nonpublic PII and

2  private financial information, including her name, social security number, date of birth,

3  addresses, and other private data" was included in the breach.  (Dkt. No. 14 at 50.)  Plaintiff

4  alleges that RGS's failure to protect her information led to a "severe invasion of the Plaintiff's

5  privacy," including the disclosure of her "financial records and identity details."  (*Id*. at 51.)  "As

6  a result of the data breach and subsequent misuse of her personal information, the Plaintiff has

7  experienced significant emotional distress," she claims.  (*Id*.)  Plaintiff also alleges that RGS is

8  liable for negligence and breach of confidentiality based on these allegations.  (*Id*.)  Plaintiff

9  collectively brings these claims under the heading "Count 9" in her Amended Complaint.  (Dkt.

10  No. 14 at 50.)

11    As these common law claims are not premised on RGS's "conduct relating to a

12  furnisher's responsibilities to provide accurate information and conduct reasonable investigations

13  following a dispute," they are not preempted.  *Subhani* 2012 WL 1980416, at *6.  Plaintiff states

14  that "[c]ommon law principles governing the data breach negligence, breach of confidentiality,

15  infliction of emotional distress and invasion of privacy are applicable in this case."  (Dkt. No. 14

16  at 51.)

17    A plaintiff must prove four elements to prevail on a negligence claim: "(1) the existence

18  of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between

19  the breach and the injury."  *Tincani v. Inland Empire Zoological Soc.*, 875 P.2d 621, 624 (1994).

20  Plaintiff alleges that Defendants "owed a duty to Plaintiff to exercise reasonable care in

21  obtaining and protecting" Plaintiff's data and breached that duty by releasing her information in

22  the data breach.  (Dkt. No. 14 at 51.)  While such a duty may well exist, Plaintiff has plead no

23  facts indicating that her data was, in fact, compromised in the data breach.  Indeed, the only

24

finite facts provided in Plaintiff's Amended Complaint suggest that she was *not* part of the breach.  In the Amended Complaint, Plaintiff summarizes a public notice released by RGS, which states that the company sent out data breach notifications "to all individuals whose information was affected by the recent data security breach." (*Id*. at 8.)  Plaintiff then asserts that RGS "never notified the Plaintiff of this data breach." (*Id*. at 7.)  In its motion to dismiss, RGS confirms that "[t]he reason Plaintiff never received any notice is simple: Plaintiff was not part of the data breach." (Dkt. No. 18 at 7 n.7.)

Plaintiff provides no concrete facts indicating she was part of the data breach.  (Dkt. No. 14 at 8.)  In her response, Plaintiff suggests that "notices may not have reached her" and references a news article about 632,204 consumer accounts that were breached.  (Dkt. No. 36 at 9.)  Plaintiff further suggests "it is highly unlikely the cybercriminals instructed the 'malware' to selectively remove Plaintiff's file before they stolen [sic] the remaining 632,204 files." (*Id*. at 10.)  In conclusion, Plaintiff states: "it is reasonable to conclude that her information may have been compromised during the breach." (*Id*.)  Plaintiff's speculative assertion that her information "may have been compromised" does not give rise to a data breach negligence claim.[7]  Likewise, Plaintiff's invasion of privacy, intrusion upon seclusion, breach of confidentiality, and infliction of emotional distress claims based on the alleged breach of her data fail as a matter of law.  (*See* Dkt. 14 at 50–54.)

---

[7] Even in cases where it is undisputed that a plaintiff's information *was* breached and stolen, plaintiffs have had a difficult time surviving a motion to dismiss.  *See, e.g., In re Accellion, Inc. Data Breach Litig*., 713 F. Supp. 3d 623 (N.D. Cal. 2024) (plaintiffs described identity theft, fraudulent charges on bank and credit accounts, temporary bank freezes, and out-of-pocket losses, such as overdraft fees, credit monitoring costs, and credit card reissuance fees resulting from breach); *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175 (D. Nev. 2022) (hackers accessed plaintiffs' driver's license numbers, passports numbers, military identification numbers, names, addresses, phone numbers, email addresses, and dates of birth).

1    Accordingly, Plaintiff's invasion of privacy, intrusion upon seclusion, breach of

2  confidentiality, and infliction of emotional distress claims are DISMISSED without prejudice.

3        c.   WFCRA and WCPA

4    Plaintiff does not bring her WFCRA claim against RGS in its capacity as a furnisher of

5  information.  Rather, Plaintiff's WFCRA claim arises from the same allegations that underpin

6  her FCRA claim discussed *supra*—that RGS accessed her credit report without her consent and

7  with no permissible purpose.  (Dkt. No. 14 at 23.)  Accordingly, section 161t(b)(1)(F) does not

8  preempt Plaintiff's WFCRA claim.  *See In re: Banner Bank*, 2022 WL 17886044, at *1

9  ("Plaintiffs' claims do not involve Defendant's reporting of inaccurate credit information to

10  TransUnion, but rather Defendant's obtaining a credit report from TransUnion for an

11  impermissible purpose . . . . [t]herefore, the Court concludes that, as a matter of law, section

12  1681t(b)(1)(F) of the FCRA does not preempt Plaintiffs' state law claims.").

13    Plaintiff alleges that RGS violated the WFCRA—specifically, Washington Revised Code

14  § 19.182.020—by "access[ing] Plaintiff's consumer credit report, nonpublic PII and private

15  financial information without a permissible purpose" and without her consent.  (Dkt. No. 14 at

16  23.)  Like the FCRA, the WFCRA establishes the circumstances under which a consumer

17  reporting agency may furnish, or an entity may procure, a consumer report.  *See* Wash Rev. Code

18  § 19.182.020.  A violation of the WFCRA constitutes an unfair or deceptive act in trade under

19  WCPA.  *See* Wash Rev. Code § 19.182.150; *Cain v. Trans Union LLC*, No. 04-cv-1779, 2006

20  WL 328409, at *6 (W.D. Wash. Feb. 9, 2006) ("RCW 19.182.150 explicitly makes a violation of

21  the WFCRA a violation of the WCPA.").  "To state a claim under the CPA, plaintiff must plead

22  facts demonstrating: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that

23  impacts the public interest, (4) which causes injury to the plaintiff in his or her business or

24

property, and (5) which injury is causally linked to the unfair or deceptive act." *Leavitt v. Credit Central LLC*, No. 23-CV-01817-RAJ, 2024 WL 4839360, *4 (W.D. Wash. Nov. 20, 2024) (citing *Indus. Indem. Co. v. Kallevig*, 114 Wash. 2d 907, 920–21 (1990)). "A private dispute can affect the public interest if it is likely that additional plaintiffs have been or will be injured in exactly the same fashion." *Id.*

Plaintiff fails to state a claim under the WCPA based on the alleged WFCRA violation, as the text of the WFCRA makes clear that debt collection constitutes a permissible purpose for furnishing a consumer report and Plaintiff admits RGS is a debt collector. Like the FCRA, the WFCRA provides that a CRA "may furnish a consumer report" if the agency has reason to believe that the information will be used "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." Wash Rev. Code § 19.182.020. As this provision is functionally identical to the FCRA provision analyzed *supra* (15 U.S.C. § 1681b), the same analysis conducted above applies here. *See supra*. Plaintiff's WFCRA claim fails for the same reason her § 1681b claim fails. *See supra*. To the extent that Plaintiff's WCPA claim is based on the same allegations—that Defendants "obtained access to Plaintiff's consumer reports and files without permissible purpose or consent"—it too fails.

Plaintiff also alleges that RGS violated the WCPA by "reporting false statements on Plaintiff's consumer file." (Dkt. No. 14 at 48.) 15 U.S.C. § 1681t(b)(1)(F) preempts Plaintiff's WCPA claim based on allegations that Defendant reported false information to a credit reporting agency. *See supra*; *Miller v. Bank of Am., Nat. Ass'n,* 858 F. Supp. 2d 1118, 1126 (S.D. Cal. 2012) (state law claims preempted "to the extent they are based on [defendant's] inaccurate reporting and failure to investigate.). Finally, Plaintiff once more asserts that her data was

breached by RGS and that the breach of her private financial information gives rise to a claim

under the WCPA. (Dkt. 14 at 46–47.) As the Court discussed *supra*, Plaintiff provides no facts

suggesting her data was breached and no facts refuting RGS's confirmation that she was not part

of the data breach. Accordingly, to the extent Plaintiff attempts to make out a WCPA claim

based on the alleged breach of her data, the claim fails as a matter of law.

In sum, Plaintiff's WFCRA and WCPA claims against RGS fail as a matter of law are

DISMISSED without prejudice.

     d.  Identity theft

Plaintiff alleges that RGS violated Washington Revised Code § 9.35.020, which

establishes that "[n]o person may knowingly obtain, possess, use, or transfer a means of

identification or financial information of another person, living or dead, with the intent to

commit, or to aid or abet, any crime." A violation of § 9.35.020 constitutes an unfair or

deceptive act in trade or commerce and an unfair method of competition for the purpose of

applying the WCPA. Wash. Rev. Code § 9.35.800. The allegations underlaying this claim are

the same as those plead in support of Plaintiff's FCRA and WFCRA claims—that RGS obtained

Plaintiff's private financial information and consumer credit reports without her knowledge,

permissible purpose, or consent. (Dkt. No. 14 at 38.) Plaintiff pleads no facts indicating that

RGS possessed an intent to commit or aid or abet any crime. (*See generally* Dkt. No. 14.) Nor

has she pled facts that indicate her data was breached or her identity was stolen. *See supra*.

Accordingly, Plaintiff's identity theft claim fails as a matter of law and is DISMISSED with

prejudice.

     e.  Invasion of privacy by intrusion upon seclusion

1    Plaintiff alleges that RGS's accessing her credit report without her consent constitutes

2  invasion of privacy and intrusion upon seclusion, as she "at all times expected to have her

3  consumer credit report kept private unless she provided her consent."  (Dkt. No. 14 at 54.)

4  Intrusion upon seclusion is an intentional tort.  *Fisher v. State ex rel. Dep't of Health*, 106 P.3d

5  836, 879 (Wash. Ct. App. 2005) ("Intent is [] an essential element.").  To establish a prima facie

6  case, a Plaintiff must show "(1) an intentional intrusion, physically or otherwise, upon the

7  solitude or seclusion of plaintiff, or her private affairs; (2) a legitimate and reasonable

8  expectation of privacy with respect to that matter or affair; (3) an intrusion that would be highly

9  offensive to a reasonable person; and (4) damage proximately caused by the defendant's

10  conduct."  *Mancini v. City of Tacoma*, 188 Wash. App. 1006 (2015).  A person acts with intent

11  under Washington law when "he or she desires to achieve the particular consequences of the act

12  or knows that the consequences are substantially certain to follow from the act."  *Est. of Jordan*

13  *by Jordan v. Hartford Acc. & Indem. Co*., 844 P.2d 403, 412 (Wash. 1993).  Plaintiff has failed

14  to plead facts that suggest an intentional intrusion on her private affairs.  Moreover, Plaintiff fails

15  to plead facts giving rise to a "reasonable expectation of privacy"; as the Court has discussed, a

16  debt collector accessing a credit report is explicitly permitted under the FCRA and WFCRA.  *See*

17  *supra*.  Accordingly, Plaintiff's inclusion upon seclusion claim ("Count 10) against RGS is

18  DISMISSED with prejudice.  (*See* Dkt. No. 14 at 54.)

19    5.  State Law Claims Against Experian

20    Plaintiff alleges that Experian violated the WFCRA and the WCPA and committed

21  defamation, invasion of privacy by intrusion upon seclusion, and identity theft.

22    a.  WFCRA and WCPA

23

24

1    Plaintiff alleges that "Experian authorized Radius Global Solutions access to Plaintiff's

2 consumer credit report, nonpublic PII and private financial information without a permissible

3 purpose" or her consent and thereby violated the WFCRA.  (Dkt. No. 14 at 24.)  Plaintiff's

4 WFCRA claims against Experian fail for the same reason Plaintiff's WFCRA claims failed

5 against RGS.  The WFCRA provides that a CRA "may furnish a consumer report" if the agency

6 has reason to believe that the information will be used "in connection with a credit transaction

7 involving the consumer on whom the information is to be furnished and involving the extension

8 of credit to, or review or collection of an account of, the consumer."  Wash Rev. Code

9 § 19.182.020.   Thus, because Experian—a CRA—furnished a consumer report with reason to

10 believe the information would be used by RGS—a debt collector—related to its collection of an

11 account, Experian had a permissible purpose under the WFCRA.  Likewise, Plaintiff's WCPA

12 claim, which is based on the same underlaying allegation, fails due to Experian having a

13 permissible purpose. (*See* Dkt. No. 14 at 49.)

14    Accordingly, Plaintiff's WFCRA and WCPA claims against Experian are DISMISSED

15 with prejudice.

16                    b.   Defamation and invasion of privacy by intrusion upon seclusion

17    Under 15 U.S.C. § 1681(h)(e), "no consumer may bring any action or proceeding in the

18 nature of defamation, invasion of privacy, or negligence with respect to the reporting of

19 information against any consumer reporting . . . except as to false information furnished with

20 malice or willful intent to injure such consumer."  "A plaintiff can allege actual malice with facts

21 supporting that the defendant knew the statement was false, or acted with a high degree of

22 awareness of its probable falsity, or in fact entertained serious doubts as to the statement's truth."

23

24

1  *Delashaw v. Seattle Times Co*., No. C18-0537JLR, 2018 WL 4027078, at *11 (W.D. Wash. Aug.

2  23, 2018).

3        As discussed *supra*, Plaintiff has failed to plausibly allege that Experian reported false

4  information about her, as she provides no facts about what specifically was falsely reported.

5  Likewise, Plaintiff has plead no facts suggesting Experian "knew the statement was false, or

6  acted with a high degree of awareness of its probable falsity." *Id*.  Plaintiff's conclusory

7  assertion that Experian "acted with malice" does not meet the pleading standard for malice.

8  (Dkt. No. 14 at 45); *see Twombly*, 550 U.S. at 555 (plaintiff's obligation "requires more than

9  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

10  do").  Because plaintiff does not plausibly plead malice or willful intent, § 1681(h)(e) preempts

11  her state tort law claims for defamation and invasion of privacy by intrusion upon seclusion.

12        Accordingly, Plaintiff's claims for defamation and invasion of privacy as against

13  Experian are DISMISSED without prejudice.

14            c.  Identity theft

15        Plaintiff asserts that Experian "facilitated identity theft against the Plaintiff through

16  negligent information possession, use, and transferring and nonexistent verification processes

17  without her knowledge or consent."  (Dkt. No. 14 at 39.)  As the Court noted *supra*, Washington

18  Revised Code § 9.35.020 establishes that "[n]o person may knowingly obtain, possess, use, or

19  transfer a means of identification or financial information of another person, living or dead, with

20  the intent to commit, or to aid or abet, any crime."  Plaintiff pleads no facts indicating that

21  Experian possessed an intent to commit or aid or abet any crime.  (*See generally* Dkt. No. 14.)

22  Nor has she pled facts that indicate her data was breached or her identity was stolen.  *See supra*.

23

24

1   Accordingly, Plaintiff's identity theft claim against Experian fails as a matter of law and is

2   DISMISSED with prejudice.

3            6.   Violations of the GLBA (invoking 15 U.S.C. §§ 6801–09)

4            Plaintiff alleges that Experian violated the GLBA "by failing to safeguard Plaintiff's

5   sensitive nonpublic personal information and using, transferring, possessing and sharing her

6   information without permissible purpose or Plaintiff's consent."  (Dkt. No. 14 at 62.)  In

7   response, Experian points out that "[t]he legislative scheme of the GLBA does not support

8   private suits for damages."  (Dkt. No. 26 at 7) (citing cases).  In reply, Plaintiff "acknowledges

9   that the GLBA does not provide a private right of action and respectfully withdraws her request

10  for civil remedies under the GLBA."  (Dkt. No. 34 at 16.)  Accordingly, Plaintiff's GLBA claims

11  are DISMISSED with prejudice.

12           7.   Individual Claims Against Barrist

13           Plaintiff's claims against Barrist are coextensive with Plaintiff's claims against RGS.

14  (*See* Dkt. No. 14.)  Generally speaking, this is not sufficient to plead CEO liability: "individual

15  defendants cannot be held liable solely because they are chief executive officers for the corporate

16  defendants."  *McNack v. Smith*, No. 2:14-cv-04810-CAS(SPx), 2015 WL 7302218, at *5 (C.D.

17  Cal. Nov. 16, 2015) (quoting *Sloan v. TransUnion*, LLC, 2010 WL 1949621, at *2 (E.D. Mich.

18  Apr. 22, 2010)).  Instead, "cases which have found personal liability on the part of corporate

19  officers have typically involved instances where the defendant was the guiding spirit behind the

20  wrongful conduct . . . or the central figure in the challenged corporate activity."  *Id*.  Here, the

21  Complaint does not indicate that Barrist took any actions individually, instead Plaintiff conflates

22  Barrist's actions with those of RGS.  The facts alleged are not sufficient to hold Barrist

23  individually liable.  *C.f Estrada v. Equifax Info. Servs*. LLC, No. CV-21-01704-PHX-SMB, 2022

24

WL 2705835, *4 (D. Ariz. July 12, 2022) (finding that where plaintiff failed to plead that CEO

took actions individually and instead conflated CEOs with corporate defendants, the complaint

was insufficient to state a claim).  Accordingly, Plaintiff's claims against Barrist are

DISMISSED without prejudice.

<h1 align="center">IV     CONCLUSION</h1>

For the reasons outlined, the Court GRANTS the motions to dismiss (Dkt. Nos. 18, 26).

All of Plaintiff's claims against Experian, RGS, and Barrist are DISMISSED.

Plaintiff may file a motion for leave to amend for those claims dismissed without

prejudice.  For each claim Plaintiff requests leave to amend, Plaintiff's motion SHALL identify

with specificity the additional facts she alleges address the deficiencies identified in this Order.

In addition to the motion itself, Plaintiff SHALL file as an exhibit to the motion a redline version

of the proposed amended complaint that highlights the specific additional facts included in the

proposed amended complaint so that the Court can easily identify and review.  The motion for

leave to amend SHALL be filed no later than December 30, 2024 or the Court will enter an order

of dismissal with prejudice against Experian, RGS, and Barrist.

The Clerk is directed to calendar this event.

Dated this 16th day of December, 2024.

David G. Estudillo
United States District Judge

ORDER ON MOTIONS TO DISMISS (DKT. NOS. 18, 26) - 36